692 S.E.2d 437 (2010)
In The Matter of K.J.D.
No. COA09-1579.
Court of Appeals of North Carolina.
May 4, 2010.
*439 Charlotte W. Nallan, for Buncombe County Department of Social Services, Asheville, for petitioner-appellee.
Michael N. Tousey, Asheville, for guardian ad litem.
Jon W. Myers, Lexington, for respondent-mother.
STROUD, Judge.
Respondent-mother appeals from a judgment adjudicating her child, K.J.D., ("Kyle")[1] as neglected and continuing the child's placement in the home of the child's maternal grandmother. For the following reasons, we affirm.
On 22 August 2008, the Buncombe County Department of Social Services ("petitioner") filed a juvenile petition ("Petition I") alleging that Kyle was a neglected juvenile in that Kyle did not receive proper care, supervision, or discipline from his parents and lived in an environment injurious to his welfare. Petitioner asked the court to grant guardianship of Kyle to the maternal grandmother and maternal step-grandfather, in whose home the child had been placed in February 2008. On 14 January 2009, the court conducted an evidentiary hearing upon Petition I. On 25 February 2009, the court filed an adjudication judgment in which it dismissed Petition I on the basis that it could not find that Kyle was neglected because petitioner was "unable to present any witnesses" to support the allegations that Kyle was exposed to the domestic violence or usage of illegal drugs by the respondent parents as alleged in the petition; the Court also found that "if this activity happened around the minor child it would have been neglect." On 5 March 2009, petitioner filed a motion to reopen the hearing or for relief from the judgment. On 19 May 2009, the court filed an order denying petitioner's motion.
On 14 April 2009, petitioner filed a second petition ("Petition II") alleging that the child was neglected. On 7 July 2009, the court conducted an evidentiary hearing upon Petition II. On 11 August 2009, the court filed an adjudication judgment. The court's judgment adjudicating Petition II shows that at the evidentiary hearing on 7 July 2009, the parties stipulated to the following findings of fact:
a. The Buncombe County Department of Social Services (the Department) first became involved with this minor child on February 4, 2008 due to allegations of domestic violence between the respondent parents, the respondent mother's assaultive behaviors towards others as well, and the respondent father's substance abuse problems. The Department found that the case was In Need of Services and transferred the case to In-Home Services on March 8, 2008, with social worker (SW) *440 Mary Thompson. The minor child was placed with the maternal grandparents in a kinship placement on February 4, 2008, and he has continued to remain in this placement.
b. The Department filed a petition pursuant to that report and that matter was heard in court on January 14, 2009, at which time the parties stipulated that the respondent parents had engaged in domestic violence, that the respondent mother was assaultive to others and had been jailed due to her assaultive behaviors, that the respondent father had a criminal history of trafficking in cocaine, and that both parents had a prior history of drug usage. The respondent parents objected to the language in the petition that alleged that the minor child had possibly been exposed to marijuana while in the respondent father's home, and the respondent parents argued that there was [sic] no allegations in the petition that the minor child had been present when the parents had engaged in domestic violence. The Department had deleted those allegations from the petition; therefore, those issues were not adjudicated.
c. Based upon the stipulations of the parties, the court found that since there was no evidence that the minor child had been in the presence of his parents when they were engaged in domestic violence, and no evidence based upon the stipulations that the minor child had been exposed to marijuana, the minor child was not a neglected child, and the court dismissed the petition.
d. The Department referred the respondent father to Partnership for a Drug Free NC, and on June 5, 2008 the respondent father went for the assessment and was given an unannounced drug screen that was positive for cocaine and high levels of marijuana. The respondent father was to return on July 24, 2008 to complete the substance abuse assessment and to begin treatment, but the respondent father has never returned, and he has never participated in any substance abuse treatment.
e. The respondent mother began Women-At-Risk on September 2, 2008 for anger management, and she has completed the first phase of 16 weeks, but she has not completed the second phase of 10 weeks. Although the respondent mother has completed part of the anger management program, she has not made any progress in addressing her anger issue.
f. The respondent mother is living with friends, and she does not have independent housing.
g. The respondent mother was in jail from approximately February 4, 2009 until February 23, 2009 for probation violation as the respondent mother was moving around so much that the probation officer could not keep in contact with her and she had failed to pay her fines.
h. The respondent father has never paid any child support for the benefit of the minor child. The respondent mother has paid some child support, but erratically in the past and none since she has been released from Jail on January 23, 2009.
The court also made extensive additional findings of fact, including that respondent-mother, while knowing marijuana was being smoked in the father's residence, left the child in the care of his father while she was incarcerated for violating probation; that the father had failed to complete the substance abuse assessment and treatment required by his plan in order to be reunited with the child; that although the father saw the child in the neighborhood, he visited the child only one time prior to December 2008 and none thereafter; that the father had not paid any child support; that respondent-mother had not maintained stable housing and employment, completed anger management classes, or participated in mental health treatment as required by her plan to be reunified with the child; that respondent-mother was diagnosed with a mental condition identified as intermittent explosive disorder, for which she was not seeking treatment; that respondent-mother would be unable to provide safe care for the child until she addresses her mental health issues; that in June 2009 respondent-mother was involved in a fight with another woman during which respondent-mother was stabbed; that during the eighteen months while the child was with the maternal grandmother, respondent-mother visited the child *441 twice on his birthday but she did not visit him at the most recent Christmas or send gifts to him; that the father did not visit the child on his birthday or Christmas and did not provide the child with any gifts; that both parents had assaulted each other on numerous occasions and the child had been exposed to "escalating verbal confrontations" between the child's parents; that neither parent had paid any support for the child in 2009; that respondent-mother had a good-paying job until the time of her incarceration and that she was erratically paying support during that time; and that the parents had neglected the child "by their failure to correct the conditions that led to the removal of the minor child from their care for the past 16 to 18 months."
The trial court also found in the dispositional portion of the order that Kyle "has remained living with his maternal grandmother and step-grandfather, and his uncle. . . who is the son of the maternal grandparents." The court found that Kyle was "happy and well-adjusted" with the maternal grandparents, and that they were meeting all of his needs. The court found that Kyle is "very bonded to the maternal grandparents and appears to be very comfortable in their home."
The court concluded that Kyle is a neglected juvenile in that the parents have not provided the child with proper care or supervision. The court continued placement of the child with the maternal grandparents and allowed the parents to have weekly supervised visits with the child. The order also set forth various requirements for the respondent-mother, including completion of parenting classes, securing stable housing and employment, completion of anger management classes, completion of a psychological evaluation and set a date for a permanency planning and review hearing.[2] Respondent-mother appealed. The child's father did not appeal.
"The allegations in a petition alleging abuse, neglect, or dependency shall be proved by clear and convincing evidence." N.C. Gen.Stat. § 7B-805 (2009). "A proper review of a trial court's finding of neglect entails a determination of (1) whether the findings of fact are supported by `clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact[.]" In re Gleisner, 141 N.C.App. 475, 480, 539 S.E.2d 362, 365 (2000) (citations omitted). "The trial court's conclusions of law are reviewable de novo on appeal." In re J.S.L., 177 N.C.App. 151, 154, 628 S.E.2d 387, 389 (2006) (citation and quotation marks omitted).
Respondent-mother contends the court erred by adjudicating the child as neglected. She argues the conclusion of law that the child was neglected is not supported by the findings of fact based upon clear, cogent and convincing evidence. Respondent-mother's brief does not address any assignments of error as to any of the findings of fact, with the exception of Finding No. 35, which will be discussed in detail below. Therefore, all of the findings of fact, with the exception of No. 35, are binding on appeal. In re P.M., 169 N.C.App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (holding that respondent's factual assignments of error were abandoned and the trial court's findings of fact were binding on appeal because respondent failed to "specifically argue in her brief that they were unsupported by the evidence").
A neglected juvenile is defined as one who "does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or . . . who lives in an environment injurious to the juvenile's welfare. . . ." N.C. Gen.Stat. § 7B-101(15) (2009). Respondent-mother disputes the court's conclusion of law that the child does not receive proper care or supervision and that the child lives in an environment injurious to the child's welfare. Although respondent-mother does not dispute the findings of fact as to the lack of care or supervision by either parent, she contends that the parents did provide an appropriate caretaker for the *442 child by agreeing for the child to reside with the maternal grandparents. Respondent-mother argues that because the child did not reside with either parent on the date of the filing of the petition, but was residing with the maternal grandmother who was providing him with proper care and supervision, the conclusion that the child was neglected is not supported by the findings of fact. Thus, according to respondent mother, the issue presented is whether a juvenile may be adjudicated as "neglected" where the child is living with a "caretaker" as defined by N.C. Gen.Stat. § 7B-101(3) pursuant to a kinship agreement which was entered prior to the filing of the petition.
Petitioner contends that respondent-mother's argument that the child cannot be neglected "since at the time of the filing of the petition the minor child was residing with the maternal grandparents" is misplaced because it "violates settled case law, statutes, and the North Carolina Department of Health and Human Services (NCDHHS) mandates to the county departments of social services . . . to make `reasonable efforts to prevent or eliminate the need to take custody of the minor child.'" Petitioner cites NCDHHS's "family centered" practice of attempting to engage a juvenile's parents in the placement decision when the juvenile cannot safely remain with a parent; only if no voluntary kinship placement can be made "does the department of social service move for non-secure custody of a child." Petitioner notes that a "kinship placement is not a legal document. The parents voluntarily agree to allow the child to remain in the care of an appropriate kinship provider; but the parents can void the agreement at any time." Petitioner also noted that the departments of social services use in-home services to assist the parents in making "necessary changes so the child can be placed back with them safely" and seek to avoid having to file a petition before the court. Petitioner contends that
if a parent can state that a child is not neglected or abused because the child has been in a kinship placement for some period of time prior to the filing of the petition, that would put departments of social services in an untenable position of being required to take custody of all children the Department has determine [sic] to be abused or neglected and to place these children in foster care, rather than allow the children to remain with people they know while the Department works with the parents to correct the conditions that led to the out-of-home placement.
Petitioner also argues that respondent-mother's position is "contrary to settled case law." Petitioner cites to several cases in support of its argument that the court may adjudicate the child as neglected based upon a parent's past neglect, where there is a risk of neglect in the future.
The difficulty in this particular case arises because it is an adjudication of neglect pursuant to N.C. Gen.Stat. § 7B-805 and not a termination of parental rights under N.C. Gen.Stat. § 7B-1111 (2009). Most cases addressing the definition of neglect arise in the context of termination of parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(1), which provides that
The court may terminate the parental rights upon a finding of one or more of the following:
(1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101.
The factual situation presented in a termination of parental rights case is normally different from that presented by an adjudication case because in a termination case, the child has usually been removed from the parent's home a substantial period of time before the filing of the petition for termination. An adjudication case normally arises immediately following the child's removal from the parent's home. Thus, "[t]his is an unusual appeal in which this Court is being asked to pass upon the sufficiency of evidence to support findings of . . . neglect at the removal, rather than at the termination, stage." In re Evans, 81 N.C.App. 449, 451, 344 S.E.2d 325, 327 (1986). This Court noted in In re Evans that

*443 [t]here is a substantive difference between the quantum of adequate proof of neglect and dependency for purposes of termination and for purposes of removal. The most significant difference is that while parental rights may not be terminated for threatened future harm, the DSS may obtain temporary custody of a child when there is a risk of neglect in the future.
81 N.C.App. at 452, 344 S.E.2d at 327. However, there is no difference in the definition of "neglect" as used in cases addressing termination of parental rights under N.C. Gen. Stat. § 7B-1111 and cases addressing adjudication of neglect under N.C. Gen.Stat. § 7B-805; both use the same definition of neglect, referring to N.C. Gen.Stat. § 7B-101(15). Therefore, we may look to cases arising in either context to determine if "neglect" has been demonstrated in this case.
This case resembles those that deal with termination of parental rights based upon neglect in that the child has not lived in a home with a parent for a substantial period of time prior to the filing of the petition. For this reason, our courts have addressed the evidence needed to demonstrate "neglect" of a child who has previously been removed from the parent's home. A prior adjudication of neglect is not sufficient for termination of parental rights. In re Brim, 139 N.C.App. 733, 742, 535 S.E.2d 367, 372 (2000) (citation omitted). The court must look at the circumstances as they currently exist and
take into consideration any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect. The determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding.

Id. (citation and quotation marks omitted). Therefore, to apply the same standard in this situation, the court should consider "evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect. The determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the [adjudication] proceeding." (Emphasis added.) See id. The need for the court to consider the conditions and the fitness of the parent to provide care at the time of the adjudication is based upon the court's obligation to consider the best interests of the child. Our Supreme Court has stated that
[o]ur discussion would not be complete unless we re-emphasized the fundamental principle underlying North Carolina's approach to controversies involving child neglect and custody, to wit, that the best interest of the child is the polar star. The fact that a parent does provide love, affection and concern, although it may be relevant, should not be determinative, in that the court could still find the child to be neglected within the meaning of our neglect and termination statutes. Where the evidence shows that a parent has failed or is unable to adequately provide for his child's physical and economic needs, whether it be by reason of mental infirmity or by reason of willful conduct on the part of the parent, and it appears that the parent will not or is not able to correct those inadequate conditions within a reasonable time, the court may appropriately conclude that the child is neglected. In determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent.
In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 251-52 (1984).
The need for the court to consider the conditions as they exist at the time of the adjudication as well as the risk of harm to the child from return to a parent is also reflected in cases in which the child has never resided with the parent. A child may be adjudicated as neglected by a parent even if the child has never resided in the parent's home. See, e.g., In re McLean, 135 N.C.App. 387, 396, 521 S.E.2d 121, 127 (1999) (holding a newborn infant may be adjudicated as neglected if, based on the facts of the case, "there is a substantial risk of future abuse or neglect"). The court in In re McLean noted that in cases where the child has never lived with the parent, "the decision of the trial *444 court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." Id.
Here, the uncontested findings of fact demonstrate that the child was placed in a kinship placement with the maternal grandmother because of both parents' inability to care for the child. In addition, respondent-mother's problems which made her unable to care for the child have continued ever since that time. The court's findings of fact show that respondent-mother has been and remains unable to adequately provide for her child's physical and economic needs. She has been unable to correct the conditions which led to the child's kinship placement with the maternal grandmother. She continues to engage in assaultive behavior. She has not completed counseling to address her anger issues or sought treatment for her mental disorder. She does not have stable housing and she does not have a job. The trial court found that respondent-mother had failed "to correct the conditions that led to the removal of the minor child from [her] care for the past 16 to 18 months." The Court also found that "the minor child would be at substantial risk of harm if either of his parents removed the child from that placement [with the maternal grandmother.]"[3] We conclude these findings support a conclusion that the child is a neglected juvenile. See N.C. Gen.Stat. § 7B-101(15).
Respondent-mother's next argument is related to her first. Here, she focuses upon the court's finding of fact No. 35 in the adjudication order whereby the court found:
Although the minor child is safely placed with his maternal grandmother, the minor child would be at substantial risk of harm if either of his parents removed the child from that placement. While neither parent has indicated that they would remove the minor child from that placement, pursuant to N.C.G.S. § 7B-100(5) the intent of the Juvenile Code, as well as the Adoption and Safe Families Act of 1997, P.L. 105-89, is that `the juvenile will be placed in a safe, permanent home within a reasonable amount of time.' (Emphasis added). The respondent parents have neglected the minor child by their failure to correct the conditions that led to the removal of the minor child from their care for the past 16 to 18 months. (Emphasis in original).
Respondent-mother contends that the court "erred by finding the minor child to be neglected when at the time of the petition's filing he was in a safe and stable relative placement and when neither N.C. Gen.Stat. § 7B-100(5) nor the Adoption and Safe Families Act of 1997, P.L. 105-89, require court recognition of a safe and stable relative placement." Respondent-mother argues in her brief that the requirements of the Adoption and Safe Families Act ("ASFA") and N.C. Gen.Stat. § 7B-100(5) "come into play only after a child is taken into the care of the county department of social services." She argues the Buncombe County DSS "had no statutory or other obligation to file a second petition in this matter after the child was safely placed with the maternal grandmother." Respondent-mother further contends that DSS has taken the position that ASFA and N.C. Gen.Stat. § 7B-100(5) "require a county department of social services to ensure that every child is in a permanent living arrangement" but that this position is "an economic and practical fiction." Thus, respondent-mother challenges the trial court's conclusion of law contained within Finding No. 35 and the trial court's reliance on ASFA and the "intent" of the Juvenile Code, but she does not challenge the findings of fact contained within Finding No. 35.
Finding No. 35 is denominated as a finding of fact but it contains both findings of fact and a conclusion of law.
The classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult. As a general rule, however, any determination requiring the exercise of judgment, see Plott v. Plott, 313 N.C. 63, 74, 326 S.E.2d 863, 870 (1985), or the application of legal principles, see Quick v. Quick, 305 N.C. 446, 452, 290 S.E.2d 653, 657-58 (1982), is more properly *445 classified a conclusion of law. Any determination reached through `logical reasoning from the evidentiary facts' is more properly classified a finding of fact. Quick, 305 N.C. at 452, 290 S.E.2d at 657-58 (quoting Woodard v. Mordecai, 234 N.C. 463, 472, 67 S.E.2d 639, 645 (1951)). The determination of neglect requires the application of the legal principles set forth in N.C. Gen.Stat. § [7B-101(15)] and is therefore a conclusion of law.
In re Helms, 127 N.C.App. 505, 510, 491 S.E.2d 672, 675-76 (1997). We will therefore address the findings of fact and the conclusion of law included within Finding No. 35 separately.
The findings of fact regarding respondent-mother and the child's circumstances contained within Finding No. 35 are:
1. [T]he minor child is safely placed with his maternal grandmother[;]
2. [T]he minor child would be at substantial risk of harm if either of his parents removed the child from that placement[; and]
3. [N]either parent has indicated that they would remove the minor child from that placement[.]
Respondent-mother does not challenge the findings of fact contained within Finding No. 35, so they are binding on appeal. In re P.M., 169 N.C.App. at 424, 610 S.E.2d at 404-05.
Finding No. 35 also includes a conclusion of law, that "[t]he respondent parents have neglected the minor child by their failure to correct the conditions that led to the removal of the minor child from their care for the past 16 to 18 months." Respondent-mother challenges only the trial court's conclusion of law that the child is neglected based upon her failure to correct the conditions that led to removal from her care and the trial court's rationale for this conclusion.
We have already determined above that the uncontested findings of fact support the trial court's conclusion that the child was neglected. The trial court's reference to ASFA and the "intent of the Juvenile Code" in Finding No. 35 was not necessary for its determination that the child was neglected. ASFA does not actually provide any substantive law which applies to the trial court's determination of neglect but sets forth the requirements which departments of social services must meet to receive federal funding for various programs. See 42 U.S.C. §§ 670-675 (2009). Thus, the trial court's unnecessary reference to ASFA does not render its conclusion of law erroneous. Likewise, the trial court's reference to the "intent" of the Juvenile Code was not necessary to its conclusion of law as to neglect. See State v. Blackwell, 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957) ("[A] correct decision of a lower court will not be disturbed because a wrong or insufficient or superfluous reason is assigned." (citation omitted)). Therefore, we are not persuaded by respondent-mother's contentions.
Respondent-mother lastly contends that her trial counsel rendered ineffective assistance of counsel by failing to raise and argue the defense of res judicata at the hearing of Petition II.[4] "In cases where the juvenile petition alleges that a juvenile is abused, neglected, or dependent, the parent has the right to counsel and to appointed counsel in cases of indigency unless that person waives the right." N.C. Gen.Stat. § 7B-602(a) (2009). "To prevail on a claim of ineffective assistance of counsel, respondent must show that counsel's performance was deficient and the deficiency was so serious as to deprive her of a fair hearing." In *446 re Bishop, 92 N.C.App. 662, 665, 375 S.E.2d 676, 679 (1989) (citation omitted).
We conclude that respondent-mother may not sustain her claim.
Under the doctrine of res judicata, a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them. Generally, in order that the judgment in a former action may be held to constitute an estoppel as res judicata in a subsequent action there must be identity of parties, of subject matter and of issues.
In re I.J., 186 N.C.App. 298, 300, 650 S.E.2d 671, 672 (2007) (citation and quotation marks omitted). Our Supreme Court has noted that "[b]oth the existence of the condition of neglect and its degree are by nature subject to change." In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). "Thus, an adjudication that a child was neglected" at an earlier time "does not bind the trial court" on the issue of neglect at a later time based upon existing conditions at the later time. Id. "A new petition, based on circumstances arising subsequent" to the original hearing is considered a new action, and is not "barred by the doctrine of res judicata." In re S.R.G., ___ N.C.App. ___, 684 S.E.2d 902, 905 (2009), disc. review and cert. denied, 363 N.C. 804, 691 S.E.2d 19 (2010).
In the case at bar, petitioner filed Petition II which alleged additional matters arising subsequent to Petition I. Thus, there is no identity of subject matter. Respondent-mother's own brief notes that "[p]aragraphs 4 (first), 4 (second), 5 and 6 contain information about the respondent parents since the filing of Petition I. Topics include drug use, anger management, and housing [as well as]. . . uncompleted programs to which Buncombe County referred the parents such as substance abuse assessment, domestic violence, and Women at Risk." (Emphasis added.) In addition, Petition II contained allegations regarding the parents' failure to pay child support after the filing of Petition I. Respondent-mother essentially argues that since her anger issues, housing inadequacies, and failure to support the child existed at the time of Petition I and continued to exist at the time of Petition II, that these conditions are not "significant new facts" and should be ignored. However, the uncontested findings of fact regarding respondent's circumstances and actions after dismissal of Petition I are sufficient to support the trial court's order, even the facts did show a continuation of a pattern of neglect which started prior to the filing of Petition I. Consequently, even if trial counsel had made a motion to dismiss Petition II as barred by res judicata, the motion would have properly been denied. Respondent-mother thus has not demonstrated that she was prejudiced by trial counsel's failure to file such a motion. We affirm.
AFFIRMED.
Chief Judge MARTIN and Judge JACKSON concur.
NOTES
[1] We will refer to the minor child K.J.D. by the pseudonym Kyle to protect the child's identity and for ease of reading.
[2] The order also contained requirements for the father, which are not included herein as he did not appeal.
[3] Although this finding is a portion of Finding No. 35, this part of Finding No. 35 was not challenged by respondent, as discussed in detail below.
[4] We note that trial counsel apparently considered the issue of res judicata, based upon the stipulation entered at the hearing that certain allegations had not been adjudicated at the hearing on Petition I. Specifically, the parties stipulated that "The respondent parents objected to the language in [Petition I] that alleged that the minor child had possibly been exposed to marijuana while in the respondent father's home, and the respondent parents argued that there was [sic] no allegations in the petition that the minor child had been present when the parents had engaged in domestic violence. The Department had deleted those allegations from the petition; therefore, those issues were not adjudicated." However, as respondent-mother argues ineffective assistance of counsel as to res judicata, we analyze the issue without reliance upon the stipulation.