IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-658

 Filed: 16 January 2018

Mecklenburg County, No. 16 JA 512

IN THE MATTER OF: B.P.

 Appeal by Respondent from order entered 17 March 2017 by Judge Ty M.

Hands in Mecklenburg County District Court. Heard in the Court of Appeals 21

December 2017.

 No brief filed for petitioner-appellee Mecklenburg County Department of Social
 Services, Youth and Family Services.

 Mercedes O. Chut for respondent-appellant mother.

 William L. Gardo II for Guardian ad Litem-appellee.

 HUNTER, JR., Robert N., Judge.

 Respondent, the mother of the juvenile B.P. (“Beth”)1, appeals from an order

adjudicating the juvenile neglected and dependent. After careful review, we vacate

and remand.

 I. Factual and Procedural Background

 On 18 October 2016, the Mecklenburg County Department of Social Services,

Youth and Family Services (“DSS”), filed a petition alleging Beth was a neglected and

 1 A pseudonym is used to protect the identity of the juvenile and for ease of reading. See N.C.R.
App. P. 3.1(b).
 IN THE MATTER OF: B.P.

 Opinion of the Court

dependent juvenile. DSS stated it received a child protective services (“CPS”) report

on 24 July 2016 regarding Beth. DSS’s investigation revealed police had responded

to a domestic violence call where Respondent reported Beth’s putative father (“Mr.

P.”) “had swung at her and then pushed the stroller over with the baby inside.”2 Mr.

P. was arrested for communicating threats and assault on a female. Meanwhile,

Respondent informed police she was homeless and had not been taking her

medication, and police became concerned about her mental status. Respondent’s case

was transferred to Family Intervention Services to address concerns regarding

domestic violence, mental health, and parenting issues. The next day, Respondent

was arrested on charges of common law robbery and conspiracy. Respondent did not

expect to be released prior to December 2016.

 DSS stated during the course of their investigation, Respondent was staying

in a laundromat. The laundromat’s owners tried to assist Respondent. The owners

had friends (“Mr. and Mrs. M.”) in Cabarrus County who were willing to take Beth.

Respondent placed Beth with Mr. and Mrs. M., and Beth was still in their care when

the petition was filed. DSS noted Respondent attempted to grant Mr. and Mrs. M.

“guardianship” of Beth via a handwritten, notarized document.

 In addition to the events which led to the filing of the petition, DSS alleged

Respondent had been diagnosed with bipolar disorder, depression, and anxiety, and

 2 DNA tests later ruled out Mr. P. as the father of the juvenile and he is not a party to this
action.

 -2-
 IN THE MATTER OF: B.P.

 Opinion of the Court

had not been compliant with treatment. DSS also noted Respondent had her parental

rights to two older children terminated. Among the issues which led to the

termination of her parental rights to those children were: Respondent’s criminal

activity and resulting arrest and incarceration; leaving the juveniles with an

inappropriate caretaker; yelling at one of the children while at a domestic violence

shelter; and pulling a knife on a friend who was holding one of the juveniles. A third

child of Respondent was placed in foster care after DSS received a report in 2013

Respondent was using crack cocaine, engaging in prostitution, and not meeting the

child’s needs. Additionally, Respondent had placed the child with someone who had

an extensive CPS history. The child was ultimately placed in her father’s custody,

and Respondent was denied visitation. DSS obtained non-secure custody of Beth and

continued her placement with Mr. and Mrs. M.

 On 10 January 2017, the date of the start of the adjudicatory hearing, DSS

filed an amended petition. DSS amended the petition to add the allegation Mr. P.

had “posted a large number of statements on Facebook that [Respondent had]

engaged in prostitution and drug use since November 22, 2016.” On 17 March 2017,

the trial court entered an order adjudicating Beth a neglected and dependent

juvenile. Respondent appeals.

 II. Standard of Review

 -3-
 IN THE MATTER OF: B.P.

 Opinion of the Court

 “The role of this Court in reviewing a trial court’s adjudication of neglect [and

dependency] is to determine ‘(1) whether the findings of fact are supported by “clear

and convincing evidence,” and (2) whether the legal conclusions are supported by the

findings of fact[.]’ ” In re T.H.T., 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007)

(quoting In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000)), aff’d as

modified, 362 N.C. 446, 665 S.E.2d 54 (2008). “If such evidence exists, the findings

of the trial court are binding on appeal, even if the evidence would support a finding

to the contrary.” Id. (citation omitted). We review the trial court’s conclusions of law

de novo on appeal. In re D.M.M., 179 N.C. App. 383, 385, 633 S.E.2d 715, 716 (2006)

(citation omitted).

 III. Analysis

 Respondent argues the trial court erred by adjudicating Beth a neglected and

dependent juvenile. Here, the trial court found as fact:

 a. On 24 July 2016, [DSS] received a [CPS] report
 regarding the child.

 b. The Charlotte-Mecklenburg Police Department
 [responded] to a domestic violence call where the mother
 reported that the father had swung at her and then pushed
 the stroller over with the baby inside.

 ....

 d. [F.P.] has pending charges for Felony Possession of
 Cocaine and Habitual Felon . . . . The father has a
 substantial criminal history.

 -4-
 IN THE MATTER OF: B.P.

 Opinion of the Court

e. The 24 July 2016 report was substantiated and the
case was transferred to Family Intervention Services to
address domestic violence, mental health and parenting
concerns.

f. On 21 September 2016, the day after the case was
transferred to Family Intervention, the mother was
arrested for three (3) counts of Common Law Robbery and
two (2) counts of Felony Conspiracy. The mother informed
[DSS] that her next court date was in December 2016, and
that she did not expect to be released before her next court
date.

g. The mother informed . . . the investigative social
worker, that she has a mental health diagnosis of bipolar
disorder, and is supposed to see a therapist at Monarch.
The mother has provided no proof of mental health
treatment or therapy involvement.

h. During the course of the investigation, the mother
was staying in a laundromat. The laundromat owners
tried to assist the mother. They had friends in Cabarrus
County who were willing to take the child and the mother
placed the child with [Mr. and Mrs. M.], the friends of the
laundromat owners. The child remains in the care of [Mr.
and Mrs. M.], the friends of the laundromat owners.

i. The mother attempted to give [Mr. and Mrs. M.]
“guardianship” via a handwritten, notarized document. It
is not a legal document. [Mr. and Mrs. M.] have no
document or authority providing them with the ability to
seek medical or other care for the child.

j. The mother has two older children, . . . . Her
parental rights to those children were involuntarily
terminated. . . . The issues regarding [one child] included
the mother’s criminal activity. [The other child] was placed
in foster care pursuant to the mother having an open case
and not making sufficient progress on addressing the
issues that led to the placement of the older sibling.

 -5-
 IN THE MATTER OF: B.P.

 Opinion of the Court

 k. The mother had another child, . . . who was also
 placed in foster care[.] The child was ultimately placed in
 the child’s father’s care.

 l. [DSS] has conducted a kinship assessment of the
 persons currently caring for the child. They do not have
 criminal or CPS history and the home is appropriate. They
 have indicated their willingness to continue to care for the
 child for as long as needed.

We are bound by those findings not challenged by Respondent on appeal. See

Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (unchallenged

findings are deemed “supported by competent evidence and [are] binding on appeal”).

 Respondent first challenges several of the trial court’s findings of fact as being

unsupported by the evidence. We address each finding in turn.

 Respondent first argues there was no evidence to support findings of fact b.

and e. Specifically, Respondent contends there is no evidence Mr. P. “swung” at her,

or the CPS report was “substantiated” for domestic violence. We agree. The only

evidence supporting these findings is the officer’s trial testimony stating he

responded to a domestic violence call where Respondent reported Mr. P. pushed the

juvenile’s stroller over while Beth was in the stroller. But, there is no competent

evidence in the record upon which to base the contentions in the report. The

responding officer also testified:

 I verified that there was no apparent injury to the baby,
 nothing that appeared that the baby had been on the

 -6-
 IN THE MATTER OF: B.P.

 Opinion of the Court

 ground. The call was that the baby had been pushed down
 in a -- in that stroller onto the ground or onto the pavement.
 I looked closely at the stroller and at the child. There was
 no signs that the stroller had been turned over in any way,
 no scuffs, no marks, no dirt, no debris of any kind. The
 child was bundled up secure and safely in the stroller, no
 dirt of any kind. It did not appear that there was any
 damage or anything done to the child.

A peer support specialist for the State of North Carolina who worked with

Respondent through Community Care Service, LLC, testified Respondent told her

Mr. P. flipped over the stroller while the baby was in it. Yet, Respondent later

admitted to DSS she lied about Mr. P. knocking over Beth’s stroller. Thus, the

evidence in the record concerning Mr. P. knocking over Beth’s stroller is not clear and

convincing. Furthermore, while there is evidence in the record Mr. P. at one point

struck Respondent in the mouth, there is no evidence indicating this occurred on 24

July 2016. Accordingly, we conclude findings b. and e. are unsupported by the

evidence.

 Respondent also contends finding d. is incorrect because it refers to Mr. P. as

“the father.” We agree. The evidence indicated Mr. P. submitted to a paternity test

which indicated he is not Beth’s father. Thus, this finding is not supported.

 Respondent next argues finding f. is misleading because the charges were

dismissed. We agree. While the finding of fact is technically accurate in stating

Respondent was charged with the criminal offenses listed in finding of fact f., the

 -7-
 IN THE MATTER OF: B.P.

 Opinion of the Court

record further demonstrates these charges were dismissed. The trial court’s findings

fail to reflect this material fact.

 Respondent next challenges finding of fact g. as being “misleading” and

“inaccurate.” The substance of the finding is Respondent has a diagnosis of bipolar

disorder and is supposed to be attending therapy, but failed to do so. However, a peer

support specialist for the State of North Carolina who worked with Respondent

through Community Care Service, LLC, testified: (1) Respondent was diagnosed with

bipolar disorder and generalized anxiety disorder; and (2) she was attending therapy

at Primary Care Solutions. Additionally, a DSS investigator testified Respondent

told her she was “on mental health medications to aid . . . bipolar, anxiety, and

depression”; and she brought Respondent to Monarch “to get her set up with a

medication and a therapy appointment.” Thus, while there was evidence in the record

to support a finding that Respondent suffered from mental illness and may not have

been taking prescribed medications, there was insufficient evidence to support a

finding that she was not attending any therapy or mental health treatment.

 Respondent next contends finding of fact h. was insufficiently specific, because

the finding did not provide any dates or clarify what was meant by “staying” at a

laundromat. We disagree. Mrs. M. testified when she met with Respondent in July

2016, Respondent told her “she was spending the days in the Laundromat, and then

it closes at midnight, and she said she spent some nights with her and the baby in an

 -8-
 IN THE MATTER OF: B.P.

 Opinion of the Court

alley nearby.” We apply the plain and obvious meaning of the trial court’s finding

and conclude Respondent was residing at the laundromat. Accordingly, Respondent’s

challenge to the trial court’s finding of fact is overruled.

 Respondent next challenges finding of fact i. Respondent contends the record

contains no evidence regarding the purported temporary guardianship document.

Moreover, Respondent argues Mr. and Mrs. M. had no difficulty obtaining medical

treatment for Beth. We agree in substance with Respondent’s argument. Mrs. M.

testified she brought the document to the doctor in August in order to obtain medical

treatment for Beth, and she returned to the doctor with Beth in September because

Beth was suffering from a stomach virus. Mrs. M. also was able to obtain updated

vaccinations for Beth. Therefore, regardless of the nature of the “guardianship”

document provided to Mr. and Mrs. M. by Respondent, it is apparent from the record

Mrs. M. was able to obtain medical treatment for Beth. Accordingly, we conclude this

finding is unsupported by the evidence.

 Respondent lastly challenges findings j. and k. Respondent cites In re J.S.,

and argues the trial court’s findings were improper because the court merely

incorporated prior court orders without making evidentiary and ultimate findings of

fact. 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004), superseded by statute on

other grounds as recognized in In re A.S., 793 S.E.2d 285). Respondent’s argument is

misplaced. In J. S., this Court found the trial court failed to comply with section 7B-

 -9-
 IN THE MATTER OF: B.P.

 Opinion of the Court

907(b) when “the trial court entered a cursory two page order” and “did not

incorporate any prior orders or findings of fact from those orders. Instead, the trial

court incorporated a court report from DSS and a mental health report . . . as a finding

of fact.” Id.3

 Here, the trial court did not “simply recite allegations” or find “a single

evidentiary fact.” Instead, the trial court employed a process of “logical reasoning,”

which is evidenced through its having made several independent findings of fact. See

In re O.W., 164 N.C. App. 699, 702, 596 S.E.2d 851, 853 (2004) (quoting In re Harton,

156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003)). Furthermore, we note “[i]n

determining whether a juvenile is a neglected juvenile, it is relevant whether that

juvenile lives in a home where another juvenile . . . has been subjected to abuse or

neglect by an adult who regularly lives in the home.” N.C. Gen. Stat. § 7B-101(15)

(Supp. 2016). In predicting whether neglect is likely to recur, the court must consider

the historical facts and background of a case. In re McLean, 135 N.C. App. 387, 396,

521 S.E.2d 121, 127 (1999). When making this determination, the court may consider

other relevant orders and documents in related proceedings. In re J.W., 173 N.C.

App. 450, 456, 619 S.E.2d 534, 540 (2005), aff’d per curiam, 360 N.C. 361, 625 S.E.2d

780 (2006). Thus, it was proper for the trial court to consider the challenged orders,

 3 N.C. Gen. Stat. § 7B-907 was repealed effective 1 October 2013, and similar provisions are
found in § 7B-906.1.

 - 10 -
 IN THE MATTER OF: B.P.

 Opinion of the Court

and the court’s findings reflect it did not merely incorporate these prior orders.

Accordingly, we overrule Respondent’s challenge to these findings of fact.

 We must next determine whether the trial court’s sustained findings of fact

support the adjudications of neglect and dependency.

 A “[n]eglected juvenile” is defined in N.C. Gen. Stat. § 7B-101(15) as:

 A juvenile who does not receive proper care, supervision, or
 discipline from the juvenile’s parent, guardian, custodian,
 or caretaker; or who has been abandoned; or who is not
 provided necessary medical care; or who is not provided
 necessary remedial care; or who lives in an environment
 injurious to the juvenile’s welfare; or the custody of whom
 has been unlawfully transferred under G.S. 14-321.2; or
 who has been placed for care or adoption in violation of law.
 In determining whether a juvenile is a neglected juvenile,
 it is relevant whether that juvenile . . . lives in a home
 where another juvenile has been subjected to abuse or
 neglect by an adult who regularly lives in the home.

N.C. Gen. Stat. § 7B-101(15) (Supp. 2016). To sustain an adjudication of neglect, this

Court has stated the alleged conditions must cause the juvenile “some physical,

mental, or emotional impairment” or create a substantial risk of such impairment.

See In re Safriet, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993). This Court

has also stated, however, “[w]here there is no finding that the juvenile has been

impaired or is at substantial risk of impairment, there is no error if all the evidence

supports such a finding.” In re Padgett, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340

(2003).

 - 11 -
 IN THE MATTER OF: B.P.

 Opinion of the Court

 Here, the trial court failed to make a finding the alleged neglectful conditions

caused Beth impairment, or put her at substantial risk of impairment. Moreover, we

cannot conclude “all the evidence” and the trial court’s findings support a

determination the juvenile was neglected. The evidence and supported findings

demonstrate Respondent suffered from mental health issues, but was attending some

treatment. While Respondent did have older children who were removed from her

care, the findings were insufficiently detailed to determine the grounds for their

removal. The findings merely state Respondent’s parental rights to one child were

terminated due to Respondent’s “criminal activity.” Respondent’s parental rights to

a second child were terminated due to her failure to correct the issues which led to

the child’s placement in foster care. However, the trial court fails to identify the

nature of these issues. No reason is stated for why a third child was placed in foster

care.

 Finally, it is apparent from the evidence and the trial court’s findings of fact

Respondent was homeless. However, the evidence and findings also demonstrate,

prior to the filing of the petition, Respondent placed Beth in a home which was found

by both DSS and the trial court to be appropriate. Thus, the findings and evidence

do not support a conclusion, at the time the petition was filed, Beth was living in an

environment injurious to her welfare and not receiving proper care and supervision.

See In re B.M., 183 N.C. App. 84, 87, 643 S.E.2d 644, 646 (2007) (“At the adjudication

 - 12 -
 IN THE MATTER OF: B.P.

 Opinion of the Court

and dispositional stage it is the status of the juvenile that is at issue rather than the

status of a parent.”).

 We note this Court has nevertheless upheld an adjudication of neglect where

the juvenile was in an appropriate placement when the petition was filed. In In re

K.J.D., 203 N.C. App. 653, 692 S.E.2d 437 (2010), the mother argued the trial court

erred by adjudicating the child neglected where, at the time the petition was filed,

the juvenile was in a voluntary kinship arrangement with the maternal

grandparents. In upholding the adjudication of neglect, this Court stated “[t]he

determinative factors must be the best interests of the child and the fitness of the

parent to care for the child at the time of the [adjudication] proceeding.” Id. at 660,

692 S.E.2d at 443 (emphasis in original) (citation omitted). This Court emphasized

“[t]he need for the court to consider the conditions as they exist at the time of the

adjudication as well as the risk of harm to the child from return to a parent[.]” Id. at

661, 692 S.E.2d at 443 (emphasis added).

 We find K.J.D. to be distinguishable from the instant case. First, we note in

K.J.D., the mother placed the juvenile in a kinship arrangement at the behest of DSS.

See id. at 654, 692 SE.2d at 439-40. Here, unlike the mother in K.J.D., Respondent

voluntarily placed Beth with Mr. and Mrs. M. on her own, without DSS’s input.

Furthermore, the uncontested findings in K.J.D. which supported the adjudication of

neglect included the mother’s: continuing inability to care for the child; inability to

 - 13 -
 IN THE MATTER OF: B.P.

 Opinion of the Court

correct the conditions which led to the placement of the child in kinship care;

continuing assaultive behavior; failure to complete counseling to address anger issues

or her mental disorder; and lack of stable housing or employment. Id. at 661, 692

S.E.2d at 444. Moreover, the trial court in K.J.D. made the ultimate finding the

juvenile would be at substantial risk of harm if removed from kinship placement and

returned to the mother’s care. Id. Such supported findings are mostly absent from

the case sub judice. Consequently, we conclude the trial court erred by adjudicating

Beth a neglected juvenile.

 We next consider the trial court’s determination Beth was a dependent

juvenile. A dependent juvenile is defined as:

 A juvenile in need of assistance or placement because (i)
 the juvenile has no parent, guardian, or custodian
 responsible for the juvenile’s care or supervision or (ii) the
 juvenile’s parent, guardian, or custodian is unable to
 provide for the juvenile’s care or supervision and lacks an
 appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-101(9) (Supp. 2016). “In determining whether a juvenile is

dependent, ‘the trial court must address both (1) the parent’s ability to provide care

or supervision, and (2) the availability to the parent of alternative child care

arrangements.’ ” In re B.M., at 90, 643 S.E.2d at 648 (quoting In re P.M., 169 N.C.

App. 423, 427, 610 S.E.2d 403, 406 (2005)).

 Respondent contends the trial court’s finding regarding the second prong, she

lacked an appropriate alternative caregiver arrangement, was erroneous, as

 - 14 -
 IN THE MATTER OF: B.P.

 Opinion of the Court

evidenced by the fact she was the one who placed Beth with Mr. and Mrs. M. We

agree. Our Court has stated in order for a parent to have an alternative caregiver

arrangement, the parent must have taken some action to identify the alternative

arrangement, and “it is not enough that the parent merely goes along with a plan

created by DSS.” In re L.H., 210 N.C. App. 355, 366, 708 S.E.2d 191, 198 (2011).

 Here, it is undisputed Respondent placed Beth with Mr. and Mrs. M., not DSS.

While it may have been with the assistance of the laundromat’s owners, this was not

a case where Respondent merely acquiesced in DSS’s plan for the juvenile. See id.

Consequently, we conclude the trial court erred by adjudicating Beth a dependent

juvenile.

 Accordingly, the adjudications of neglect and dependency are vacated. Because

we vacate the adjudications of neglect and dependency, we need not address

Respondent’s remaining arguments on appeal.

 IV. Conclusion

 For the foregoing reasons, we vacate the trial court’s order.

 VACATE AND REMAND.

 Judge DILLON concurs.

 Judge MURPHY concurs in a separate opinion.

 - 15 -
 No. COA17-658 – In the Matter of B.P.

 MURPHY, Judge, concurring.

 I concur fully with the opinion of the Majority, however, I write separately to

commend the actions of the owners of the laundromat and Mr. and Mrs. M in helping

Beth and respondent. The positive impact they have made on Beth’s young life cannot

be measured today, but will be measured in decades to come. Thank you for not only

recognizing the needs of a total stranger, but also for acting upon it.