HUNTER, JR., Robert N., Judge.
*426 Respondent, the mother of the juvenile B.P. ("Beth")[1] , appeals from an order adjudicating the juvenile neglected and dependent. After careful review, we vacate and remand.
I. Factual and Procedural Background
On 18 October 2016, the Mecklenburg County Department of Social Services, Youth and Family Services ("DSS"), filed a petition alleging Beth was a neglected and dependent juvenile. DSS stated it received a child protective services ("CPS") report on 24 July 2016 regarding Beth. DSS's investigation revealed police had responded to a domestic violence call *427 where Respondent reported Beth's putative father ("Mr. P.") "had swung at her and then pushed the stroller over with the baby inside."[2] Mr. P. was arrested for communicating threats and assault on a female. Meanwhile, Respondent informed police she was homeless and had not been taking her medication, and police became concerned about her mental status. Respondent's *916 case was transferred to Family Intervention Services to address concerns regarding domestic violence, mental health, and parenting issues. The next day, Respondent was arrested on charges of common law robbery and conspiracy. Respondent did not expect to be released prior to December 2016.
DSS stated during the course of their investigation, Respondent was staying in a laundromat. The laundromat's owners tried to assist Respondent. The owners had friends ("Mr. and Mrs. M.") in Cabarrus County who were willing to take Beth. Respondent placed Beth with Mr. and Mrs. M., and Beth was still in their care when the petition was filed. DSS noted Respondent attempted to grant Mr. and Mrs. M. "guardianship" of Beth via a handwritten, notarized document.
In addition to the events which led to the filing of the petition, DSS alleged Respondent had been diagnosed with bipolar disorder, depression, and anxiety, and had not been compliant with treatment. DSS also noted Respondent had her parental rights to two older children terminated. Among the issues which led to the termination of her parental rights to those children were: Respondent's criminal activity and resulting arrest and incarceration; leaving the juveniles with an inappropriate caretaker; yelling at one of the children while at a domestic violence shelter; and pulling a knife on a friend who was holding one of the juveniles. A third child of Respondent was placed in foster care after DSS received a report in 2013 Respondent was using crack cocaine, engaging in prostitution, and not meeting the child's needs. Additionally, Respondent had placed the child with someone who had an extensive CPS history. The child was ultimately placed in her father's custody, and Respondent was denied visitation. DSS obtained non-secure custody of Beth and continued her placement with Mr. and Mrs. M.
On 10 January 2017, the date of the start of the adjudicatory hearing, DSS filed an amended petition. DSS amended the petition to add the allegation Mr. P. had "posted a large number of statements on Facebook that [Respondent had] engaged in prostitution and drug use since November *428 22, 2016." On 17 March 2017, the trial court entered an order adjudicating Beth a neglected and dependent juvenile. Respondent appeals.
II. Standard of Review
"The role of this Court in reviewing a trial court's adjudication of neglect [and dependency] is to determine '(1) whether the findings of fact are supported by "clear and convincing evidence," and (2) whether the legal conclusions are supported by the findings of fact[.]' " In re T.H.T. , 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (quoting In re Gleisner , 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) ), aff'd as modified , 362 N.C. 446, 665 S.E.2d 54 (2008). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." Id. (citation omitted). We review the trial court's conclusions of law de novo on appeal. In re D.M.M. , 179 N.C. App. 383, 385, 633 S.E.2d 715, 716 (2006) (citation omitted).
III. Analysis
Respondent argues the trial court erred by adjudicating Beth a neglected and dependent juvenile. Here, the trial court found as fact:
a. On 24 July 2016, [DSS] received a [CPS] report regarding the child.
b. The Charlotte-Mecklenburg Police Department [responded] to a domestic violence call where the mother reported that the father had swung at her and then pushed the stroller over with the baby inside.
....
d. [F.P.] has pending charges for Felony Possession of Cocaine and Habitual Felon.... The father has a substantial criminal history.
e. The 24 July 2016 report was substantiated and the case was transferred to Family Intervention Services to address domestic violence, mental health and parenting concerns.
f. On 21 September 2016, the day after the case was transferred to Family Intervention, the mother was arrested for three (3) counts of Common Law Robbery and two (2) counts of Felony Conspiracy. The mother informed [DSS] that her next court *917 date was in December 2016, and that she did not expect to be released before her next court date. *429 g. The mother informed ... the investigative social worker, that she has a mental health diagnosis of bipolar disorder, and is supposed to see a therapist at Monarch. The mother has provided no proof of mental health treatment or therapy involvement.
h. During the course of the investigation, the mother was staying in a laundromat. The laundromat owners tried to assist the mother. They had friends in Cabarrus County who were willing to take the child and the mother placed the child with [Mr. and Mrs. M.], the friends of the laundromat owners. The child remains in the care of [Mr. and Mrs. M.], the friends of the laundromat owners.
i. The mother attempted to give [Mr. and Mrs. M.] "guardianship" via a handwritten, notarized document. It is not a legal document. [Mr. and Mrs. M.] have no document or authority providing them with the ability to seek medical or other care for the child.
j. The mother has two older children, .... Her parental rights to those children were involuntarily terminated.... The issues regarding [one child] included the mother's criminal activity. [The other child] was placed in foster care pursuant to the mother having an open case and not making sufficient progress on addressing the issues that led to the placement of the older sibling.
k. The mother had another child, ... who was also placed in foster care[.] The child was ultimately placed in the child's father's care.
l. [DSS] has conducted a kinship assessment of the persons currently caring for the child. They do not have criminal or CPS history and the home is appropriate. They have indicated their willingness to continue to care for the child for as long as needed.
We are bound by those findings not challenged by Respondent on appeal. See Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (unchallenged findings are deemed "supported by competent evidence and [are] binding on appeal").
Respondent first challenges several of the trial court's findings of fact as being unsupported by the evidence. We address each finding in turn.
*430 Respondent first argues there was no evidence to support findings of fact b. and e. Specifically, Respondent contends there is no evidence Mr. P. "swung" at her, or the CPS report was "substantiated" for domestic violence. We agree. The only evidence supporting these findings is the officer's trial testimony stating he responded to a domestic violence call where Respondent reported Mr. P. pushed the juvenile's stroller over while Beth was in the stroller. But, there is no competent evidence in the record upon which to base the contentions in the report. The responding officer also testified:
I verified that there was no apparent injury to the baby, nothing that appeared that the baby had been on the ground. The call was that the baby had been pushed down in a-in that stroller onto the ground or onto the pavement. I looked closely at the stroller and at the child. There was no signs that the stroller had been turned over in any way, no scuffs, no marks, no dirt, no debris of any kind. The child was bundled up secure and safely in the stroller, no dirt of any kind. It did not appear that there was any damage or anything done to the child.
A peer support specialist for the State of North Carolina who worked with Respondent through Community Care Service, LLC, testified Respondent told her Mr. P. flipped over the stroller while the baby was in it. Yet, Respondent later admitted to DSS she lied about Mr. P. knocking over Beth's stroller. Thus, the evidence in the record concerning Mr. P. knocking over Beth's stroller is not clear and convincing. Furthermore, while there is evidence in the record Mr. P. at one point struck Respondent in the mouth, there is no evidence indicating this occurred on 24 July 2016. Accordingly, we conclude findings b. and e. are unsupported by the evidence.
Respondent also contends finding d. is incorrect because it refers to Mr. P. as *918 "the father." We agree. The evidence indicated Mr. P. submitted to a paternity test which indicated he is not Beth's father. Thus, this finding is not supported.
Respondent next argues finding f. is misleading because the charges were dismissed. We agree. While the finding of fact is technically accurate in stating Respondent was charged with the criminal offenses listed in finding of fact f., the record further demonstrates these charges were dismissed. The trial court's findings fail to reflect this material fact.
Respondent next challenges finding of fact g. as being "misleading" and "inaccurate." The substance of the finding is Respondent has *431 a diagnosis of bipolar disorder and is supposed to be attending therapy, but failed to do so. However, a peer support specialist for the State of North Carolina who worked with Respondent through Community Care Service, LLC, testified: (1) Respondent was diagnosed with bipolar disorder and generalized anxiety disorder ; and (2) she was attending therapy at Primary Care Solutions. Additionally, a DSS investigator testified Respondent told her she was "on mental health medications to aid ... bipolar, anxiety, and depression"; and she brought Respondent to Monarch "to get her set up with a medication and a therapy appointment." Thus, while there was evidence in the record to support a finding that Respondent suffered from mental illness and may not have been taking prescribed medications, there was insufficient evidence to support a finding that she was not attending any therapy or mental health treatment.
Respondent next contends finding of fact h. was insufficiently specific, because the finding did not provide any dates or clarify what was meant by "staying" at a laundromat. We disagree. Mrs. M. testified when she met with Respondent in July 2016, Respondent told her "she was spending the days in the Laundromat, and then it closes at midnight, and she said she spent some nights with her and the baby in an alley nearby." We apply the plain and obvious meaning of the trial court's finding and conclude Respondent was residing at the laundromat. Accordingly, Respondent's challenge to the trial court's finding of fact is overruled.
Respondent next challenges finding of fact i. Respondent contends the record contains no evidence regarding the purported temporary guardianship document. Moreover, Respondent argues Mr. and Mrs. M. had no difficulty obtaining medical treatment for Beth. We agree in substance with Respondent's argument. Mrs. M. testified she brought the document to the doctor in August in order to obtain medical treatment for Beth, and she returned to the doctor with Beth in September because Beth was suffering from a stomach virus. Mrs. M. also was able to obtain updated vaccinations for Beth. Therefore, regardless of the nature of the "guardianship" document provided to Mr. and Mrs. M. by Respondent, it is apparent from the record Mrs. M. was able to obtain medical treatment for Beth. Accordingly, we conclude this finding is unsupported by the evidence.
Respondent lastly challenges findings j. and k. Respondent cites In re J.S. , and argues the trial court's findings were improper because the court merely incorporated prior court orders without making evidentiary and ultimate findings of fact. ( 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004), superseded by statute on other grounds as recognized in *432 In re A.S. , --- N.C. App. ----, 793 S.E.2d 285 (2016) ). Respondent's argument is misplaced. In J.S. , this Court found the trial court failed to comply with section 7B-907(b) when "the trial court entered a cursory two page order" and "did not incorporate any prior orders or findings of fact from those orders. Instead, the trial court incorporated a court report from DSS and a mental health report ... as a finding of fact." Id .[3]
Here, the trial court did not "simply recite allegations" or find "a single evidentiary fact." Instead, the trial court employed a *919 process of "logical reasoning," which is evidenced through its having made several independent findings of fact. See In re O.W. , 164 N.C. App. 699, 702, 596 S.E.2d 851, 853 (2004) (quoting In re Harton , 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003) ). Furthermore, we note "[i]n determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile ... has been subjected to abuse or neglect by an adult who regularly lives in the home." N.C. Gen. Stat. § 7B-101(15) (Supp. 2016). In predicting whether neglect is likely to recur, the court must consider the historical facts and background of a case. In re McLean , 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999). When making this determination, the court may consider other relevant orders and documents in related proceedings. In re J.W. , 173 N.C. App. 450, 456, 619 S.E.2d 534, 540 (2005), aff'd per curiam , 360 N.C. 361, 625 S.E.2d 780 (2006). Thus, it was proper for the trial court to consider the challenged orders, and the court's findings reflect it did not merely incorporate these prior orders. Accordingly, we overrule Respondent's challenge to these findings of fact.
We must next determine whether the trial court's sustained findings of fact support the adjudications of neglect and dependency.
A "[n]eglected juvenile" is defined in N.C. Gen. Stat. § 7B-101(15) as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or the custody of whom has been unlawfully transferred under G.S. 14-321.2 ; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a *433 neglected juvenile, it is relevant whether that juvenile ... lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen. Stat. § 7B-101(15) (Supp. 2016). To sustain an adjudication of neglect, this Court has stated the alleged conditions must cause the juvenile "some physical, mental, or emotional impairment" or create a substantial risk of such impairment. See In re Safriet , 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993). This Court has also stated, however, "[w]here there is no finding that the juvenile has been impaired or is at substantial risk of impairment, there is no error if all the evidence supports such a finding." In re Padgett , 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003).
Here, the trial court failed to make a finding the alleged neglectful conditions caused Beth impairment, or put her at substantial risk of impairment. Moreover, we cannot conclude "all the evidence" and the trial court's findings support a determination the juvenile was neglected. The evidence and supported findings demonstrate Respondent suffered from mental health issues, but was attending some treatment. While Respondent did have older children who were removed from her care, the findings were insufficiently detailed to determine the grounds for their removal. The findings merely state Respondent's parental rights to one child were terminated due to Respondent's "criminal activity." Respondent's parental rights to a second child were terminated due to her failure to correct the issues which led to the child's placement in foster care. However, the trial court fails to identify the nature of these issues. No reason is stated for why a third child was placed in foster care.
Finally, it is apparent from the evidence and the trial court's findings of fact Respondent was homeless. However, the evidence and findings also demonstrate, prior to the filing of the petition, Respondent placed Beth in a home which was found by both DSS and the trial court to be appropriate. Thus, the findings and evidence do not support a conclusion, at the time the petition was filed, Beth was living in an environment injurious to her welfare and not receiving proper care and supervision. See In re B.M. , 183 N.C. App. 84, 87, 643 S.E.2d 644, 646 (2007) ("At the adjudication and dispositional stage it is the status of the juvenile that is at issue rather than the status of a parent.").
*920 We note this Court has nevertheless upheld an adjudication of neglect where the juvenile was in an appropriate placement when the petition was filed. In In re K.J.D. , 203 N.C. App. 653, 692 S.E.2d 437 (2010), the *434 mother argued the trial court erred by adjudicating the child neglected where, at the time the petition was filed, the juvenile was in a voluntary kinship arrangement with the maternal grandparents. In upholding the adjudication of neglect, this Court stated "[t]he determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the [adjudication] proceeding ." Id . at 660, 692 S.E.2d at 443 (emphasis in original) (citation omitted). This Court emphasized "[t]he need for the court to consider the conditions as they exist at the time of the adjudication as well as the risk of harm to the child from return to a parent [.]" Id . at 661, 692 S.E.2d at 443 (emphasis added).
We find K.J.D. to be distinguishable from the instant case. First, we note in K.J.D. , the mother placed the juvenile in a kinship arrangement at the behest of DSS. See id. at 654, 692 S.E.2d at 439-40. Here, unlike the mother in K.J.D. , Respondent voluntarily placed Beth with Mr. and Mrs. M. on her own, without DSS's input. Furthermore, the uncontested findings in K.J.D. which supported the adjudication of neglect included the mother's: continuing inability to care for the child; inability to correct the conditions which led to the placement of the child in kinship care; continuing assaultive behavior; failure to complete counseling to address anger issues or her mental disorder; and lack of stable housing or employment. Id . at 661, 692 S.E.2d at 444. Moreover, the trial court in K.J.D. made the ultimate finding the juvenile would be at substantial risk of harm if removed from kinship placement and returned to the mother's care. Id. Such supported findings are mostly absent from the case sub judice . Consequently, we conclude the trial court erred by adjudicating Beth a neglected juvenile.
We next consider the trial court's determination Beth was a dependent juvenile. A dependent juvenile is defined as:
A juvenile in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement.
N.C. Gen. Stat. § 7B-101(9) (Supp. 2016). "In determining whether a juvenile is dependent, 'the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.' " In re B.M. , 183 N.C. App. at 90, 643 S.E.2d at 648 (quoting In re P.M. , 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005) ).
*435 Respondent contends the trial court's finding regarding the second prong, she lacked an appropriate alternative caregiver arrangement, was erroneous, as evidenced by the fact she was the one who placed Beth with Mr. and Mrs. M. We agree. Our Court has stated in order for a parent to have an alternative caregiver arrangement, the parent must have taken some action to identify the alternative arrangement, and "it is not enough that the parent merely goes along with a plan created by DSS." In re L.H. , 210 N.C. App. 355, 366, 708 S.E.2d 191, 198 (2011).
Here, it is undisputed Respondent placed Beth with Mr. and Mrs. M., not DSS. While it may have been with the assistance of the laundromat's owners, this was not a case where Respondent merely acquiesced in DSS's plan for the juvenile. See id . Consequently, we conclude the trial court erred by adjudicating Beth a dependent juvenile.
Accordingly, the adjudications of neglect and dependency are vacated. Because we vacate the adjudications of neglect and dependency, we need not address Respondent's remaining arguments on appeal.
IV. Conclusion
For the foregoing reasons, we vacate the trial court's order.
VACATE AND REMAND.
*921 Judge DILLON concurs.
Judge MURPHY concurs in a separate opinion.

A pseudonym is used to protect the identity of the juvenile and for ease of reading. See N.C.R. App. P. 3.1(b).

DNA tests later ruled out Mr. P. as the father of the juvenile and he is not a party to this action.

N.C. Gen. Stat. § 7B-907 was repealed effective 1 October 2013, and similar provisions are found in § 7B-906.1.