IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-522

Filed 18 July 2023

Pitt County, Nos. 21 JA 192–94

IN THE MATTER OF: A.J., J.C., J.C.

Appeal by respondent-mother from order entered 22 March 2022 by Judge Lee Teague in Pitt County District Court. Heard in the Court of Appeals 13 July 2023.

> *The Graham Nuckolls Conner Law Firm, PLLC, by Jon G. Nuckolls, for petitioner-appellee Pitt County Department of Social Services.*
>
> *North Carolina Administrative Office of the Courts, by GAL Appellate Counsel Matthew D. Wunsche and Brittany T. McKinney, for guardian ad litem.*
>
> *Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender Jacky L. Brammer, for respondent-appellant mother.*

TYSON, Judge.

Respondent is the mother of four-year-old A.J. ("Amanda"), thirteen-year-old J.C. ("Jade"), and fifteen-year-old J.C. ("Juliet"). *See* N.C. R. App. P. 42 (pseudonyms are used throughout the opinion to protect the identity of the juveniles). She appeals from an order entered 22 March 2022, adjudicating Amanda as a neglected juvenile, and Jade and Juliet as neglected and dependent juveniles, and placing the children into the custody of the Pitt County Department of Social Services ("DSS"). Respondent argues, and we agree, the inadmissible evidence and the trial court's findings thereon are insufficient to support its conclusions and adjudications. We

reverse and remand.

## I. Background

In June 2021, DSS received a report alleging neglect and improper discipline based on an incident between Respondent and Jade. DSS created a safety plan with Respondent, in which she agreed to refrain from physical discipline and to begin to receive mental health services for herself and the children. Respondent also agreed to allow Jade and Juliet to continue residing with their maternal great aunt, with whom they had resided since 2018.

In November 2021, the Washington County Department of Social Services ("WCDSS") sent DSS a report of another altercation between Respondent and Jade. On 21 December 2021, WCDSS responded to a report alleging Respondent had locked Jade out of the house. WCDSS, DSS, and Respondent were unable to identify a temporary safety placement for Jade.

On 22 December 2021, DSS filed juvenile petitions alleging Amanda was a neglected juvenile and alleging Jade and Juliet were neglected and dependent juveniles, based upon these three reported incidents. DSS also obtained nonsecure custody of Jade, and she was placed into the care of her maternal great aunt. Juliet remained in the voluntary care of her maternal great aunt, and Amanda, the youngest daughter, has remained in Respondent's care.

On 8 February 2022, DSS filed a notice it intended to present hearsay statements at the adjudication hearing purportedly made by Jade and Juliet. DSS

asserted their statements, made to DSS and WCDSS social workers, fell under the residual hearsay exception of N.C. Gen. Stat. § 8C-1, Rule 803(24) (2021).

The petitions were heard on 17 February 2022. During the adjudicatory phase, DSS presented testimony from a DSS social worker and a WCDSS social worker, each of whom testified to statements purportedly made to them by Jade. Respondent's counsel objected before, during, and after the social workers introduced the hearsay statements, but the court overruled the objections each time and allowed the statements to be admitted into evidence.

On 22 March 2022, the trial court entered an order adjudicating all three children as neglected juveniles and adjudicating both Jade and Juliet as dependent juveniles. The court later determined the children's best interests demanded for them to be placed into DSS' custody. Respondent timely appealed.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7B-1001(a)(3) (2021).

## III. Issues

Respondent argues the trial court erred by: (1) admitting hearsay statements purportedly made by Jade, (2) adjudicating all three children as neglected, (3) adjudicating Jade and Juliet to be dependent, and (4) concluding the children's best interests demanded for all of them to be removed from their parent and family and placed into DSS custody.

## IV. Standard of Review

This Court reviews an adjudication "to determine whether the trial court's findings of fact are supported by clear and convincing competent evidence and whether the court's findings, in turn, support its conclusions of law." *In re J.R.*, 243 N.C. App. 309, 312, 778 S.E.2d 441, 443 (2015) (citation and internal quotation marks omitted). "When reviewing findings of fact in a juvenile order, the reviewing court 'simply disregards information contained in findings of fact that lack sufficient evidentiary support' and examines whether the remaining findings support the trial court's determination." *In re A.J.L.H.*, 384 N.C. 45, 52, 884 S.E.2d 687, 693 (2023) (quoting *In re A.C.*, 378 N.C. 377, 394, 861 S.E.2d 858 (2021)). The trial court's conclusions of law are reviewed *de novo. Id.*

## V. Analysis

### A. Findings of Fact

The trial court's order contains eighteen adjudicatory findings of fact, eight of which Respondent challenges in whole or in part:

> 5. The Department received a report relating to the Juveniles beginning on June 6, 2021, alleging neglect and improper discipline on the part of the Respondent Mother. The specific allegations were that the Juvenile, [Jade], was observed limping by another family member and later disclosed once Respondent Mother was gone that she had been in a physical altercation with the Respondent Mother. The Juvenile did not want to get out of the car and the Respondent Mother began twisting her leg trying to remove her from the car. The Juvenile locked herself in the car to get away from the Respondent Mother. The

Respondent Mother then took a shovel and broke the window. Thereafter, the Respondent Mother beat the Juvenile with a belt buckle in the head and all over her body. She also choked and threatened to kill the Juvenile. The Respondent Mother admitted to the Department Social Worker that the altercation occurred. The Respondent Mother admitted she broke (sic) the car window in today's testimony.

. . .

7. Another report was received on November 16, 2021 that the Respondent Mother had choke slammed the Juvenile, [Jade], and threw her out of the car. This incident was reportedly witnessed by a family member over a video call. During the hearing . . . Respondent Mother yelled out, "I did it." when the choke slam was testified to.

8. On December 21, 2021, the Juvenile, [Jade], had agreed to go with Respondent Mother thinking she would be able to get her Christmas gifts and return to her [great] aunt's home, where she had been living for several years. Instead, the Juvenile discovered that Respondent Mother planned to enroll her in school in Washington County, which upset the Juvenile.

9. On December 21, 2021, there was another report made that the Respondent Mother locked the Juvenile outside in the cold weather because she refused to babysit her two-year-old sister. When [the WCDSS social worker] arrived at the home, he discovered that law enforcement had to handcuff Respondent Mother just to get her to calm down. [He] observed Respondent Mother was "cussing and fussing" and demanding that the child, [Jade] come inside. [The social worker] confirmed that [Amanda], the 2-year-old child, was present and witnessed Respondent Mother's outbursts and being handcuffed. This was upsetting to the 2-year-old. Respondent Mother's behavior was unstable.

10. Neighbors, who witnessed the child's distress had let the Juvenile, [Jade], in their home to wait for assistance, as they were concerned about her.

11.    The Juvenile, [Jade], is very afraid of Respondent Mother and does not want to be in her care.  The Juvenile has refused to get out of the Social Worker's car, fearful that the Respondent Mother would kill her.  The Juvenile, [Jade], confirmed there had been prior physical altercations with Respondent Mother.

12.    The Respondent Mother suffers from mental and psychological illnesses as a result of traumatic experiences throughout her life, including witnessing the murder of the Juveniles' father.  In 2016, Respondent Mother was the driver of a vehicle involved in an accident where two others were killed.  The Respondent Mother suffered injuries that required hospitalization.  The Respondent Mother has denied mental health diagnosis.  The Respondent Mother has presented as extremely hostile and aggressive throughout the hearing of this matter as evidenced by numerous outbursts in the Courtroom and aggressive comments directed toward other participants in this proceeding.

13.  The Respondent Mother also has a history of drug use, specifically marijuana.

Respondent argues the trial court, over multiple objections, erroneously admitted hearsay statements purportedly made by Jade.  We agree.

DSS's notice of its intent to offer hearsay statements specifically indicated the proffered statements purportedly fell under the residual exception of N.C. Gen. Stat. § 8C-1, Rule 803(24)(2021).  However, at the hearing, DSS  changed its position from that basis asserted in the notice and appeared to argue Jade's statements were admissible because the social worker had

> direct knowledge.   He had this conversation with the juvenile and he, as he testified, had a conversation with the Respondent-Mother, both of which are parties to the case,

and anything that the mom said, I would argue, is an admission of the Respondent-Mother and the juvenile as well. Her statement should be allowed in, as she is a party to the case as well.

Over objections, the trial court ruled the statements were admissible because "the juvenile is a party to the action with the admission by the party as well."

The trial court's determination and ruling were erroneous under either of the possible hearsay exceptions noticed or presented by DSS at the hearing. In order to admit hearsay under the residual exception, the trial court must

determine whether (1) proper notice has been given; (2) the hearsay statement is not specifically covered elsewhere; (3) the statement possesses circumstantial guarantees of trustworthiness; (4) the statement is material; (5) the statement is more probative than any other evidence which the proponent can procure through reasonable efforts; and (6) the interest of justice will be best served by admission.

*In re W.H.*, 261 N.C. App. 24, 27, 819 S.E.2d 617, 620 (2018) (citation omitted).

Such "careful consideration" must be reflected in the trial court's findings. *In re F.S.*, 268 N.C. App. 34, 41, 835 S.E.2d 465, 470 (2019). As no such findings were made, either during the hearing or in the order, Jade's purported hearsay statements were not properly admitted under this exception and should have been excluded upon objection. *Id.* at 42, 835 S.E.2d at 470.

A statement made by a party opponent is

admissible as an exception to the hearsay rule if it is offered against a party and it is (A) his own statement, in either his individual or a representative capacity, or (B) a statement of which he has manifested his adoption or belief

> in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship or (E) a statement by a coconspirator of such party during the course and in furtherance of the conspiracy.

N.C. Gen. Stat. § 8C-1, Rule 801(d) (2021).

In abuse, neglect, and dependency actions, the parents are party opponents to the petitioner-complainant. *In re J.M.*, 255 N.C. App. 483, 489, 804 S.E.2d 830, 834 (2017). The trial court erred in concluding Jade, a juvenile, was a "party to the case," and, as her statements do not fall under any of the exceptions outlined in Rule 801(d), her purported statements were not admissible. Respondent's objections should have been sustained.

Neither DSS nor the guardian *ad litem* contest or argue Respondent's assertion of Jade's purported statements constituted inadmissible hearsay. Instead, they contend Respondent failed to establish the inadmissible hearsay statements were prejudicial and argue the findings were supported by other properly admitted clear and convincing evidence. Respondent counters and contends the prejudice to her is "readily apparent," as the trial court's conclusions are unsupported by a factual basis, absent the inadmissible hearsay evidence. *In re F.S.*, 268 N.C. App. at 41, 835 S.E.2d at 470. We agree.

At the hearing, the DSS social worker acknowledged DSS was still investigating the allegations in all three reports, and the majority of the evidence to

support the unsubstantiated allegations was based upon Jade's purported statements. We disregard the challenged findings, or portions thereof, which rely upon Jade's inadmissible hearsay statements or those which are otherwise unsupported. *In re A.J.L.H.*, 384 N.C. at 52, 884 S.E.2d at 693. This includes the entirety of Finding of Fact 13, as it relies solely upon inadmissible hearsay, and the entirety of Finding of Fact 7, as the only portion not solely based on Jade's inadmissible hearsay statements was apparently a misapprehension by the court.

The order identifies 16 November 2021 as the date the report "was received," by DSS, which tracks the language of the petitions. The testimony at hearing indicates WCDSS received the report 9 November 2021. Respondent asserts this discrepancy supports her assertion and argument that the trial court's findings were merely improper recitations of allegations in the petitions and do not reflect an adjudication of the evidence and findings of facts. However, it appears: (1) the report was first received by WCDSS, which then forwarded the report to DSS; and, (2) only one event allegedly occurred in November 2021.

Moreover, no properly admitted evidence supports any allegations from November 2021. When the court sought clarification on what the allegation of "choke-slammed" meant, Respondent objected and the transcript shows she stated she "didn't do it[,]" and not that she did. The properly admitted evidence, including Respondent's testimony and the social worker's testimony concerning their knowledge of the reports, supports portions of Findings of Fact 5, 8, 9, 10, 11, and 12.

Finding of Fact 5 has sufficient evidence to support an argument had occurred between Jade and Respondent on or about 6 June 2021. Jade purportedly refused to her mother's instruction to get out of the car, Respondent allegedly slapped and hit Jade with a belt, Jade locked herself in the car, and Respondent broke the vent window to unlock the car and to gain access. The remainder of Finding of Fact 5 is unsupported by properly admitted evidence.

The alleged 21 December 2021 incident, as described in Findings of Fact 8, 9, 10, and 11, finding another argument occurred between Jade and Respondent is supported by sufficient evidence. Jade was allegedly upset by Respondent's intention to enroll her in a school located in Washington County. Neighbors allegedly saw Jade standing outside and invited her to come into and wait inside their house.

Police officers allegedly told a WCDSS social worker they had handcuffed Respondent prior to his arrival. Respondent began "arguing and cussing" when the social worker called the child's maternal great aunt. The social worker allegedly believed Jade was "afraid" because, as had occurred with Respondent earlier, Jade remained inside the DSS vehicle, recalcitrant and disobeying instructions, and had refused Respondent's instructions for her to exit the DSS vehicle and go inside of Respondent's home. Amanda was two years old and was allegedly present during the incident. The remainder of these findings are unsupported by properly admitted evidence.

Sufficient evidence supports portions of Finding of Fact 12, finding Respondent

had experienced several severe traumatic events in her life, had denied diagnoses of mental illness, and had outbursts during the hearing. However, no clear and convincing evidence and no expert medical testimony were presented to show or prove Respondent "suffers from mental and psychological illnesses as a result of traumatic experiences[.]"

"Without the improperly admitted hearsay evidence, [and with the lack of any other clear and convincing evidence,] the record does not support the trial court's conclusion[s]." *In re F.S.*, 268 N.C. App. at 41, 835 S.E.2d at 470. Respondent has established she was prejudiced by the trial court's erroneous admission of hearsay and other unsupported testimony. *Id.*

## B. Neglect

The trial court concluded all three children were neglected juveniles as defined in N.C. Gen. Stat. § 7B-101(15), as they did "not receive proper care, supervision or discipline from [their] parent, guardian, custodian or caretaker and [they] live[d] in an environment injurious to their welfare." "In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile . . . lives in a home where another juvenile has been subjected to abuse or neglect *by an adult who regularly lives in the home.*" N.C. Gen. Stat. § 7B-101(15) (2021) (emphasis supplied).

The unsupported findings of fact, as discussed above, are insufficient to support an adjudication that Jade was neglected. An argument between a parent and child or use of corporal punishment, with no evidence of any resulting marks,

bruising, or other injury, does not constitute neglect. *In re Thompson*, 64 N.C. App. 95, 98-99, 306 S.E.2d 792, 794 (1983) (concluding that a child who is repeatedly "disciplined so severely that bruises and internal abrasions [can be] a 'neglected' juvenile"); *See State v. Varner*, 252 N.C. App. 226, 228, 796 S.E.2d 834, 836 (2017) ("[O]ur Supreme Court has recognized that, as a general rule, a parent . . . is not criminally liable for inflicting physical injury on a child in the course of lawful administering corporal punishment." (citation omitted)); *In re C.B.*, 180 N.C. App. 221, 224, 636 S.E.2d 336, 338 (2006) (holding the respondent's punishment by "spanking [or] whipping that resulted in a bruise" and not "serious injury" did not constitute abuse under N.C. Gen. Stat. § 7B-101(1)).

Similarly, the supported findings regarding the June and December 2021 incidents are insufficient to establish Respondent's improper care or supervision of her children. Respondent testified that she felt it was necessary to break the car vent window after Jade had locked herself inside the vehicle and refused Respondent's instructions to open the door or exit the vehicle. Respondent testified she only used "light force" to break a vent window only to unlock the car.

Respondent's intention to enroll Jade in school located in Washington County, where Respondent lived, allegedly precipitated the December incident. The place of the family's residence and choice of their children's school is a parent's prerogative under parental care, custody, and control. Testimony at the hearing shows Respondent believed a school transfer was necessary, due to Jade's aggressive

behavior at her current Greene County school. No record evidence supports a finding Respondent had locked Jade out of the home. Instead, a recalcitrant and undisciplined pattern of behavior is shown by Jade locking herself inside of and refusing to leave a car when she does not get her way, or disagrees and argues with Respondent.

Moreover, the evidence establishes that during all relevant periods and with Respondent's permission, Jade had been residing with her grandmother and later with her maternal great aunt. Where a child is residing in a voluntary kinship arrangement prior to any DSS involvement, and no evidence or adjudicatory findings support a conclusion the child has been subjected to harm in the parent's primary care, custody, and control, "the findings and evidence do not support a conclusion" of the child "living in an environment injurious to her welfare and not receiving proper care and supervision." *In re B.P.*, 257 N.C. App. 424, 434, 809 S.E.2d 914, 920 (2018). A child or DSS personnel disagreeing with or preferring a different path to a parent's prerogatives and decisions for their child is not neglect. With no supporting evidence, the trial court erred in adjudicating Jade as a neglected juvenile. *Id.* at 434, 809 S.E.2d at 920.

The trial court's evidentiary findings center around the incidents between Jade and Respondent. The court made no evidentiary findings whatsoever concerning Juliet, who lived with her great aunt, and only one relevant finding concerning two-year-old Amanda. Though Amanda's presence while Respondent was "arguing and

cussing" speaks "to the quality of [her] home environment[,]" that single finding does not support a conclusion and adjudication Amanda was neglected. *In re J.C.M.J.C.*, 268 N.C. App. 47, 58, 834 S.E.2d 670, 678 (2019).

As the evidence fails to establish Jade was a neglected juvenile, the trial court also erred in, *ipso facto,* adjudicating Juliet, who was living at her maternal great aunt's home, and two-year-old Amanda as neglected juveniles. *Cf. In re G.C.*, 384 N.C. 62, 68, 884 S.E.2d 658, 662 (2023) (evidentiary findings establishing neglect of one child *residing in the home* may support an ultimate finding another child was neglected).

The trial court also made a finding regarding Amanda's "agitation" during the hearing and Respondent's unwillingness to remove Amanda from the proceedings. The purpose of an adjudicatory hearing is to determine only "the existence or nonexistence of any of the conditions alleged in a petition." N.C. Gen. Stat. § 7B-802 (2021). The trial court failed to make findings to show this interaction was relevant or admissible in any manner as adjudicatory evidence concerning the allegations in the petition. *In re V.B.,* 239 N.C. App. 340, 344, 768 S.E.2d 867, 870 (2015) (providing that post-petition evidence may be considered where it is relevant to "a fixed and ongoing circumstance" as alleged in the petition).

## C. Dependency

The trial court concluded Jade and Juliet were "dependent" juveniles as their "parent, guardian or custodian is unable to provide for [their] care or supervision and

lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2021).

"In determining whether a juvenile is dependent, 'the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.'" *In re B.M.*, 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007) (quoting *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005)). "Findings of fact addressing *both prongs must be made before* a juvenile may be adjudicated as dependent, and the *court's failure to make* these findings *will result in reversal* of the court." *Id.* (emphasis supplied).

The trial court failed to make any evidentiary findings or conclusions regarding Respondent's ability to care for or to supervise Jade and Juliet. The supported findings, as detailed above, address Respondent's arguments with Jade; no findings or conclusions show Respondent's behavior rendered her "wholly unable to parent" Jade or Juliet. *In re H.L.*, 256 N.C. App. 450, 458, 807 S.E.2d 685, 690 (2017).

While the trial court referenced Respondent's purported mental state, as concluded above, no evidence supports a finding that Respondent suffered from "mental and psychological illnesses," let alone "serious psychological problems" that impaired her ability to care for and supervise her children. *See In re T.B.*, 203 N.C. App. 497, 503, 692 S.E.2d 182, 186 (2010) (concluding that the mother's "suicidal ideation and tendencies," "chronic state of stimulus overload," and diagnoses of "Chronic Post Traumatic Stress Disorder, Major Personality Disorder, Major

Depressive Disorder, and Dependent Personality Disorder" impaired her ability to parent her children).

We also reject DSS' and the guardian *ad litem's* assertion Respondent is unable to care for Jade and Juliet without constant assistance. The trial court failed to make any findings, other than her witnessing the murder of her older girl's father and being hospitalized from an automobile accident, regarding Respondent's reasons and permissions for Jade's and Juliet's voluntary placement with their grandmother and later their maternal great aunt for several years prior to the juvenile petitions.

The evidence also does not support a finding such a placement was necessary due to Respondent's unwillingness or inability to parent. Testimony shows Jade and Juliet originally went to live with their grandmother while Respondent recovered from injuries suffered from her car accident. After their grandmother's death and with Respondent's permissions, Jade and Juliet voluntarily went to live with their grandmother's sister: their maternal great aunt. Respondent testified she was willing and able to care for Jade and Juliet and to continue to parent Amanda. No evidence was presented to the contrary.

As the trial court failed to make sufficient findings, we conclude the trial court erred in adjudicating Jade and Juliet as dependent juveniles. *See In re J.A.G.*, 172 N.C. App. 708, 716, 617 S.E.2d 325, 332 (2005). That adjudication is reversed.

## VI.   Conclusion

The trial court erred in admitting the objected-to hearsay statements

purportedly made by Jade to WCDSS and DSS social workers. Respondent was prejudiced by the court's error. The findings of fact, unsupported by properly admitted evidence, are insufficient to support the trial court's adjudications either that Jade, Juliet, and Amanda were neglected, or that Jade and Juliet were dependent. The 22 March 2022 order is reversed and this cause is remanded for dismissal. *See In re F.S.*, 268 N.C. App. at 47, 835 S.E.2d at 473. In light of our holding, we need not address Respondent's arguments concerning disposition. *It is so ordered.*

REVERSED AND REMANDED.

Judges Flood and Riggs concur.