An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-295

Filed 19 November 2025

Gaston County, Nos. 23JA000066-350, 23JA000067-350

IN THE MATTER OF: P.H. & W.H.

Appeal by respondent from order entered 8 November 2024 by Judge Angela G. Hoyle in Gaston County District Court. Heard in the Court of Appeals 30 October 2025.

> *Attorney for Gaston County Department of Social Services, by J. Edward Yeager, for the petitioner-appellee.*
>
> *BJK Legal, by Benjamin J. Kull, for the respondent-appellant-father.*
>
> *Michelle FormyDuval Lynch, attorney for guardian ad litem.*

TYSON, Judge.

Respondent-Father appeals from Adjudication Judgment filed 24 July 2024 and Disposition Order filed 8 November 2024. We affirm the trial court's Adjudication Judgment and Disposition Order.

## I.  Background

Gaston County Department of Health and Human Services ("DHSS") filed a juvenile petition on 27 February 2023, alleging "Patty," age ten, was abused and

neglected, and "Wendy," age eight, was neglected. *See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identity of minors). When the petition was filed, Patty and Wendy were living with Respondent-Father and had weekend visitation with their maternal grandparents ("Respondent-Caretakers"). Patty and Wendy's mother is deceased. Respondent-Father has a pending first-degree murder charge for the death of Patty and Wendy's mother, who died from tetrahydrozoline poisoning. Tetrahydrozoline is an ingredient found in Visine and similar eye drops.

An amended petition was filed on 26 April 2023 alleging Father had poisoned Patty with tetrahydrozoline during a weekend lacrosse practice. Respondent-Father allegedly gave Patty a Gatorade bottle during practice, and she drank most of the contents. After leaving practice, Patty went home with Respondent-Caretakers. While she was at their home, she was on a video-conference FaceTime call with Respondent-Father during which she started feeling dizzy and passed out. Her aunt came to Respondent-Caretaker's home, picked her up, and took her to the hospital. She was initially taken to CaroMont Regional Medical Center in Mount Holly, but once lab work was performed, she was transferred to Levine Children's Hospital in Charlotte.

Based on documentation and witness statements from Patty's hospital visit, she exhibited symptoms commonly associated with tetrahydrozoline ingestion. Her urine was tested during her hospital visit and the results detected tetrahydrozoline and O-desmethylvenlafaxine, a metabolite of the anti-depressant drug venlafaxine,

which is not prescribed to children.

A hearing was held on 1-2 July 2024. The trial court adjudicated Patty as abused and neglected and Wendy as neglected by separate orders entered 24 July 2024. A separate Disposition Order was entered on 8 November 2024, which awarded custody of Patty and Wendy to their maternal aunt and uncle, who live out-of-state. Respondent-Caretakers were also permitted regular unsupervised visitation with both Patty and Wendy. Repsondent-father appeals.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)(2) and 7B-1001(a)(3) (2023).

## III. Issues

Respondent-Father argues: (1) the trial court erred by denying his motion *in limine* based upon a misapprehension of law; and, (2) the neglect adjudication for Wendy was improper because a father does not neglect his daughter by determining who she has a relationship with.

## IV. Respondent-Father's Motion *in Limine*

Respondent-Father argues the trial court erroneously failed to perform the balancing test under Rule 403 when admitting character evidence against him and based its denial of his motion *in limine* on a misapprehension of law. We disagree.

### A. Standard of Review

When the trial court has made findings of fact and

conclusions of law to support its 404(b) ruling . . . we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

The decision of whether to exclude or include evidence under Rule 403 is generally left to the trial court's discretion. *See State v. Chapman*, 359 N.C. 328, 348, 611 S.E.2d 794, 811 (2005) ("Rulings under North Carolina Rule of Evidence 403 are discretionary, and a trial court's decision on motions made pursuant to Rule 403 are binding on appeal, unless the dissatisfied party shows that the trial court abused its discretion."). Unless the ruling was "'manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision[,]'" a trial court's Rule 403 ruling should not be overturned. *State v. Young*, 368 N.C. 188, 210-11, 775 S.E.2d 291, 306 (2015) (quoting *State v. Hyde*, 352 N.C. 37, 55, 530 S.E.2d 281, 293 (2000)).

## B. Analysis

The analysis in *State v. Bynum* outlines the process used for determining the admissibility of character evidence:

> *State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986), set forth the procedure to be followed in considering the admissibility of evidence pursuant to Rule 404(b). The trial court must first make the determination that the evidence is of the type and offered for a proper purpose under the rule. *See State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66

> (1990). Next, a determination of relevancy should be made. Relevancy is defined as "any tendency to make a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1986). Upon a finding that the evidence offered is of the type intended, that its purpose is other than to show propensity, and that it is relevant, the trial judge is then required to balance the probative value of the extrinsic conduct evidence against its prejudicial effect. *Morgan*, at 640, 340 S.E.2d at 91.

*State v. Bynum*, 111 N.C. App. 845, 848-849, 433 S.E.2d 778, 780 (1993).

Character evidence is generally "not admissible for the purpose of proving that [a person] acted in conformity therewith on a particular occasion," although there are some exceptions. N.C. Gen. Stat. § 8C-1, Rule 404(a) (2023). "Evidence of other crimes, wrongs, or acts . . . . may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2023).

When prior incidents of purported criminal activity are offered for a proper purpose under Rule 404(b), "'the ultimate test of admissibility is whether they are sufficiently similar and not so remote as to run afoul of the balancing test between probative value and prejudicial effect[.]'" *State v. Godfrey*, 263 N.C. App. 264, 270, 822 S.E.2d 894, 899 (2018) (quoting *State v. West*, 103 N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991)); *see also* N.C. Gen. Stat. § 8C-1, Rule 403 (2023). In general, decisions made regarding the inclusion or exclusion of evidence under Rule 403 generally rests

"'within the trial court's sound discretion[,]'" and in performing our analysis, "'we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record.'" *State v. Nova,* 295 N.C. App. 686, 693, 906 S.E.2d 337, 343 (2023) (first quoting *State v. Wilson*, 345 N.C. 119, 127, 478 S.E.2d 507, 513 (1996), then quoting *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008)).

Where a trial court conducts an extensive *voir dire* addressing the admission of disputed evidence and issues numerous findings of fact supporting the evidence's probative value, this Court has held the trial court did not abuse its discretion under Rule 403. *See State v. Peterson*, 179 N.C. App. 437, 460, 634 S.E.2d 594, 612 (2006).

While the Rule 403 balancing test should be equally applied in both jury and bench trials, the purpose of Rules 403 and 404 are whether evidence of prior crimes or bad acts may improperly influence a fact finder to deprive an accused of the presumption of innocence and raise a "presumption of guilt." *See Id.* at 458, 634 S.E.2d at 611. "Under the statutory scheme of Rules 403 and 404, the concern [ ] anything other than direct evidence of a defendant's identity in a similar offense might *mislead the jury* and raise a legally spurious presumption of guilt is met instead by the balancing test required by Rule 403." *Id.* (internal quotation n marks omitted) (emphasis supplied) (highlighting a key purpose of the Rule 403 balancing test is to shield a jury, rather than a judge, from considering improper evidence).

The identify of the factfinder "makes a big difference in evaluating the

likelihood [ ] the factfinder mistakenly based its decision" on improperly admitted evidence. *Williams v. Illinois,* 567 U.S. 50, 140 n. 4, 183 L. Ed. 2d 89, 108 n. 4 (2012). Absent some showing the trial judge abused their discretion in performing the Rule 403 balancing test, the "matter [of weighing evidence is] generally left to [their] sound discretion." *State v. Washington,* 141 N.C. App. 354, 367, 540 S.E.2d 388, 397 (2000).

"As long as the procedure followed by the trial court demonstrates [ ] a Rule 403 balancing test was conducted, a specific finding is not required." *State v. Stephens,* 275 N.C. App. 890, 902, 853 S.E.2d 488, 497 (2020) (Tyson, J., concurring). For example, in *State v. Harris*, this Court upheld the validity of a trial court's balancing analysis where no specific finding was made indicating the probative value of evidence outweighed its prejudicial effect. 149 N.C. App. 398, 405, 562 S.E.2d 547, 551 (2002). In *Harris*, this Court found it sufficient where the record reflected an analysis of the evidence and a determination by the trial court such evidence was properly related to the case at issue under Rule 404. *Id.* (explaining "as long as the procedure followed by the trial court demonstrates that a Rule 403 balancing test was conducted, a specific finding is not required").

Respondent-Father argues his pending first-degree murder charge in connection with his wife's death from purported tetrahydrozoline poisoning, the same substance found in his daughter Patty's urine, was more prejudicial than probative. The Guardian *ad Litem*, DHSS, and Respondent-Caretakers countered the pending charge was relevant under Rule 404(b) because it demonstrated his purported motive

to frame Respondent-Caretakers and to exclude them from their grandchildren's lives. The trial court denied Respondent-Father's motion *in limine* to exclude his pending murder charge and made findings the evidence was valid in demonstrating his purported motive to poison Patty in an effort to exclude Respondent-Caretakers from the lives of his children.

The trial court's disposition order found Respondent-Father had observed Patty "had her head down and, when he asked her to lift her head, she looked sick and appeared to be 'pale and gray.'" Father recorded the FaceTime call, but did not call for emergency personnel or otherwise make any attempt to alert Respondent-Caretakers to Patty's symptoms and illness.

The trial court also found Respondent-Father "later described to medical staff at CaroMont Hospital the juvenile [Patty] as looking like her mother [ ] had looked just prior to her death in 2018 yet he did not make any attempt to intervene and obtain medical care." Respondent-Father told staff he believed Respondent-Caretakers had poisoned Patty by putting Visine eyedrops into her water. Respondent-Father failed to report he had given Patty a Gatorade bottle at lacrosse practice and instead reported all she had to drink at that time was the water Respondent-Grandfather had given her.

At the time the trial judge considered Respondent-Father's motion *in limine*, a *voir dire* was conducted to determine the extent of the evidence he sought to exclude and the basis for the exclusion. Prior to the trial court's ruling, DHHS argued to the

trial court Father's pending murder charges were probative to demonstrate motive under Rule 404(b). Like in *Harris*, this sufficiently demonstrates the trial court properly conducted the Rule 403 balancing test. 149 N.C. App. at 405, 562 S.E.2d at 551.

The record is devoid of evidence suggesting the trial judge failed to perform the balancing test as required under Rule 403, and we hold the trial court did not abuse its discretion in finding the Rule 404(b) evidence sufficiently probative and not unduly prejudicial under Rule 403. *Id.*; *Stephens,* 275 N.C. App. at 902, 853 S.E.2d at 497. We affirm the trial court's denial of Respondent-Father's motion *in limine*.

## V. Wendy's Neglect Adjudication

Respondent-Father contends Wendy's neglect adjudication must be reversed because: (1) his actions did not rise to the level of neglect; and, (2) insufficient evidence was proffered to support the conclusion Wendy was harmed by his alleged inappropriate conduct against Patty. We disagree.

### A. Standard of Review

"The role of this Court in reviewing a trial court's adjudication of neglect is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact[.]" *In re B.P.,* 257 N.C. App. 424, 428, 809 S.E.2d 914, 916 (2018) (citation and internal quotation omitted). If such clear and convincing evidence exists, "the findings of the trial court are binding on appeal, even if the evidence would support

a finding to the contrary." *Id.* "We review the trial court's conclusions of law *de novo* on appeal." *Id.*

## B. Analysis

Respondent-Father argues Wendy's neglect adjudication was based upon the unsupported conclusion Respondent-Father had improperly attempted to remove Respondent-Caretakers from Wendy's life. Specifically, Respondent-Father challenges the decision to decide "whom one's children may have a relationship with" is "unquestionably" within the parent's purview.

Respondent-Father further alleges Wendy's neglect adjudication was improperly based on findings of fact without evidentiary support. Respondent-Father contends Finding of Fact 75, 77, 79, 80 and 85 are unsubstantiated. Those Findings of Fact provide:

> 75. The Court finds that Respondent/father has provided an injurious environment for the juveniles by exposing them to inappropriate behaviors and actions intended to harass and/or intimidate Respondent/caretakers and by intentionally taking actions that caused the juveniles' abrupt separation from their family.
>
> . . . .
>
> 77. That Respondent/father has engaged in behavior that is stalking and/or harassing in nature in that he would often drive by locations where he knew one or both of the maternal grandparents were present, sometimes making derogatory gestures toward Respondent/caretaker [maternal grandfather], and he regularly did video and or photograph the maternal grandparents in public places for events that the juveniles [Patty] and [Wendy] did attend.

. . . .

79. That Respondent/father did follow Respondent/caretaker [maternal grandfather] and/or the juveniles regularly as indicated by his statement during his testimony that Respondent/caretaker had "broken his routine" on the date of the events when he was driving the juvenile [Patty] away from lacrosse practice.

80. That Respondent/father committed stalking and/or harassing actions at times in the presence of one or both of the juveniles [Patty] and [Wendy].

. . . .

85. The Court finds that such an abrupt separation from their family caused by Respondent/father's intentional actions was and continues to be highly detrimental to the mental and emotional well-being of the juveniles [Patty] and [Wendy].

A minor child is neglected if "her parent or legal guardian '[d]oes not provide proper care, supervision, or discipline' or '[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare'" *In re L.C.*, 387 N.C. 475, 480, 915 S.E.2d 106, 111 (2025) (quoting N.C. Gen. Stat. § 7B-101(15) (2023)). "In order to adjudicate a juvenile neglected, our courts have additionally required [ ] there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." *Id.* (quoting *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003)).

North Carolina case law provides "[a] court may not adjudicate a juvenile neglected *solely based upon* previous [DSS] involvement relating to other children."

*In re A.W.,* 377 N.C. 238, 248, 856 S.E.2d 841, 850 (2021) (citation omitted) (emphasis supplied). "Rather, in concluding that a juvenile 'lives in an environment injurious to the juvenile's welfare,' the clear and convincing evidence in the record must show current circumstances that present a risk to the juvenile." *Id.* (internal citation omitted). "[W]hen assessing allegations of neglect based on the abuse of another child in the same home, the mere fact [ ] the abuse occurred is insufficient to support the adjudication." *In re E.H.,* __ N.C. __, __, 919 S.E.2d 233, 234 (2025). "'[I]n determining whether a juvenile is a neglected juvenile, it is *relevant* whether that juvenile . . . lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.'" *Id.* at __, 919 S.E.2d at 237 (quoting N.C. Gen. Stat. § 7B-101(15) (2023)).

"[T]here must be the presence of other factors to suggest the neglect or abuse will be repeated" to reference another child's abuse or neglect adjudication as evidence to uphold the current child's adjudication. *Id.* (citation omitted). "[T]hose other factors can be circumstances surrounding the abuse itself [ ] indicat[ing] other children in the home could face similar harm." *Id.* (citation and internal quotation marks omitted). Such factors can "include offering an 'implausible explanation' for the abuse of another child, 'failing to acknowledge' another child's abuse, or 'insisting [ ] the parent did nothing wrong when the facts show the parent is responsible for the abuse.'" *Id.* (citations omitted).

Here, the trial court found and concluded Respondent-Father had created an

injurious environment for Wendy by intentionally taking actions to separate her and Patty from Respondent-Caretakers, their maternal grandparents. This conclusion was based on clear and convincing evidence indicating Father was willing to purportedly poison the children to frame Respondent-Caretakers and to exclude them from visiting with the children, which falls within one of the permissible factors to suggest Wendy lives in an environment injurious to her welfare. *Id.* While Patty's adjudication alone, with no further evidence, is insufficient to support Wendy's adjudication, the factual circumstances of Patty's poisoning and Respondent-Father's reaction support a conclusion Wendy is "at a substantial risk of such impairment" if she remains in the home with him. *In re L.C.*, 387 N.C. at 480, 915 S.E.2d at 111 (citation omitted).

Notably, Respondent-Father does not contest any of the findings of fact regarding: the unexplained presence of tetrahydrozoline and O-desmethylvenlafaxine in Patty's urine, him giving Patty a Gatorade bottle at lacrosse practice and failing to report it, or his failure to seek emergency care when Patty appeared to exhibit symptoms like her deceased-mother. Each of the findings of fact Respondent-Father contests are supported by clear and convincing evidence. Father's argument is without merit. *See In re B.P.*, 257 N.C. App. at 428, 809 S.E.2d at 916.

## VI.    Conclusion

The trial court's denial of Respondent-Father's motion *in limine* and the neglect adjudication of Wendy are affirmed. *It is so ordered*.

AFFIRMED.

Judges WOOD and FREEMAN concur.

Report per Rule 30(e).